Jeff Brownfield *v.* D. S. Howell's Executrix, &c.

**Attachment—Acts Constituting Valid One.**

In an action against a corporation, by injunction, an attachment of all choses in action, franchises, money on hand, served on the President and Treasurer of said corporation, a prior lien is obtained over a fund, owing by a third party, not made a party to the suit, but whom the defendant admitted was indebted to them, this amount by the answer of the debtor was paid in by a verbal order five days before the suit was filed. Such an attachment would be prior to a creditor who subsequently attached the fund, by serving the debtor with due process.

Same.

> An allegation in the answer of the creditor that he is advised and believes that no valid or effectual attachment had been levied on the debt in controversy, not sufficient to overthrow the lis pendens by a prior suit, being a seizure of all the assets, choses in action, moneys, etc.

### APPEAL FROM NELSON CIRCUIT COURT.

December 16, 1871.

OPINION OF THE COURT BY JUDGE PETERS:

Appellee as executrix of of Daniel S. Howell, deceased, being a judgment creditor with an execution and a return of *nulla bona* of The Bardstown and Green River Turnpike Road Company, on the 30th of July, 1858, filed her petition in the court below against said turnpike road company and others, alleging the foregoing facts and the amount of its indebtedness to her, which is several thousand dollars, that it had under its charter made a turnpike road, beginning in the county of Nelson, and continuing it through several other counties, had erected gates at various and proper places on said road, in the several counties through which it was constructed, at which tolls were collected, that said company owns no other property to her knowledge except, said turnpike road, and its franchises, *choses in action,* money on hand, &c., none of which can be reached by an ordinary execution, that William Southerland is the president, and E. B. Smith, the treasurer, of said company, and the last named person is authorized by law to collect from the several gate keepers on said road, the tolls received by them, and she prays that said turnpike road company, and Smith, its treasurer, whom she makes defendants may be compelled to answer her petition, and to set forth all the choses in action, money and other property of said corporation that may be in their possession, or under their control, and that the same may be attached, and by the appropriate judgment applied to the satisfaction of her debt. She also prayed, that said corporation should be required by proper orders, and judgments of the courts, to collect all tolls, to which it might be entitled, and hold the same subject to the further orders of the court, that it should by its officers, and agents, at each term of the court, report the various sums collected, and that the same should be applied to the extinguishment of her

debt, and if by that means the same could not be paid, then she prayed that the road, its franchises, etc., should be sold and the proceeds thereof paid over to her.

On the 31st of July, 1858, the following order was made in the case by P. B. Muer, circuit judge: "The defendants are ordered to discover all the money, choses in action, and other property, and estate of said corporation, and the same is attached, and to be held subject to the further order of the court in this cause. And the defendants are enjoined and commanded to *exercise* the franchise granted them by the charter, by collecting, and demanding the tolls, which they are authorized to collect for the use of the road in the petition mentioned, and to hold the same, and to report the same to this court on the first day of each term till this suit is disposed of; but the defendants may, out of said tolls, pay such sums as may be necessary to repair the road and to pay the gate keepers, and all the necessary expenses of collecting said tolls; the plaintiff first to give bond in the penalty of $500, to pay all costs, and damages occasioned by this order if found wrongful, with security to be approved by the clerk, and he will endorse the process accordingly."

The bond as required in said order, was executed, and the summons issued with the order indorsed, and executed on the treasurer of said corporation on the 4th and on its president on the 9th of August, 1858.

The corporation by its president filed an answer on the 29th of September, 1858, admitting its indebtedness to appellee, setting forth the names of quite a number of other persons as its creditors, alleging that its gate No. 5 had been given up to, and the tolls collected there, set apart for the payment of appellant, who is named as a creditor in the answer, and also alleging that Carter & Thomas were indebted for passing their stage coaches over said road to a considerable amount; but they were not formally made defendants to appellee's suit.

On the 2nd of April, 1861, appellee, the executrix of Howell, filed an amended petition, in which she made appellant a defendant to her suit, and charged amongst other things, that by an unauthorized and unlawful agreement between him and Southerland, the president of said corporation, the control of Gate No. 5 on its road, had been given up to appellant, and the tolls received at that gate transferred to him, all of which he had collected, and appropriated, which tolls amounted to large

sums, and she prayed for an account thereof. On that amended
petition a summons was issued, and executed on appellant on
*July 2nd, 1861.* Carter & Thomas were also made defendants to
her suit, and were served with process.

June 5th, 1862, appellant filed his answer, in which he stated,
that the turnpike road company was indebted to him as shown
by a writing signed by Southerland, its president, which writing
he *filed,* and which was endorsed with the several payments made
to him, the last of which he alleges was made *"on the 25th day
of July, 1858,* being six days before appellee filed her original
petition *with injunction."*

And in a subsequent part of this answer after asserting that
the assignment to him of the tolls which were received at said
gate, was for the purpose of liquidating a debt justly due him
by the company, and that it was done in good faith, he alleges
that he had another besides the one for the payment of which
the proceeds of Gate No. 5 were assigned to him, against said
corporation, on which he had instituted an action, recovered a
judgment, and had an execution, and a return of *nulla bona,* that
he then instituted a suit in equity against said corporation and
others in the court below, to enable him to collect said judgment
which suit was pending when he filed his answer, and which he
referred to, and made a part of the suit of appellee, Howell,
against said company and others.

In that suit, he alleged that Carter & Thomas were indebted to
said corporation in the sum of $400, and made them defendants,
attached the amount owing by them to said corporation, and had
the summons with the order of attachment served on Carter &
Thomas; they came in court, admitted an indebtedness of $408
to the road company and paid that sum into the court. But in
their answer to his petition they state that before the attachment
of appellant was served on them, they had given to the president
of the Bardstown and Green River Turnpike Road Company a
verbal order for the money on E. B. Smith, the treasurer of said
company, but that its president had not received the money from
said Smith, treasurer as aforesaid, when the attachment of appel-
lant was served on them; that they then drew the money from the
treasurer and paid the same into court, subject to its future order
—this answer was filed the *28th of March, 1860.*

In the same case on the *3rd of October, 1860,* on motion of
appellant, an order was made referring it to E. E. McKay as

the court's commissioner, to ascertain what was the true amount of said Carter & Thomas' indebtedness to said turnpike road company, at the institution of his said suit, also of that of Turner Willson vs. Same and those of Foreman, and of Howell's Executrix vs. Same, and to ascertain and report other matters; from the last named period until *June 28th, 1866;* it does not appear that any other order was made in the case, on the last day, a judgment was rendered, directing the money paid into court by Thomas & Carter as aforesaid, to be paid over to appellant.

At the October term of 1865, of the Nelson circuit court, the venue in the cases of Howell's Exrx. vs. the Corporation, &c., of Willson vs. Same and of Foreman vs. Same, was changed by order of court, to the Bullitt circuit court, and the papers were transmitted to said court, where the suits remained until the 15th of April, 1867, when they were by consent of parties remanded to the Nelson circuit court, but the case of appellant against the corporation, and Carter & Thomas, was not then consolidated with the other cases, and the venue thereof was not changed.

At the May term, 1869, the executrix of Howell filed an amended petition setting forth many of the facts herein stated, and the history and progress of the suit in which she is plaintiff against said corporation, the two suits of Willson and Foreman against the same defendants consolidated with her own, and also that of appellant against said corporation and Carter & Thomas, stating very elaborately the manner in which the judgment of 1866 had been obtained, and reviewing with unmerited severity, from any thing appears in this record, the action of certain persons when the judgment was rendered, and concludes with the prayer that appellant be adjudged to pay over to her the four hundred and eighty dollars paid into court by Carter & Thomas, that the judgment of 1866 in his favor ordering the money to be paid over to him be set aside and for general relief.

The cause was submitted on final hearing on the 24th of December, 1869, appellant having previously filed his answer to appellee's last amended petition, in which he denied all fraud on his part, and other allegations therein not deemed material to state, and controverted her right in this proceeding to set aside, or modify the judgment in his favor; and the court then adjudged that of the $400 paid into court by Carter and Thomas, appellant was entitled to $100, this being the sum which Carter

& Thomas were indebted to the company on the 30th of July, 1858, when she filed her original petition and obtained her injunction—and that he should pay her $90, with interest from the 4th of November, 1868, and that J. E. Newman, who had borrowed of the Carter & Thomas fund $150, should pay the same with interest from the 7th of April, 1860, to her, and that Wm. Murphy, who was the court's receiver to loan out the money, and who had retained one hundred dollars in his own hands, should pay her that sum, with interest thereon at six per cent. from the last named date.

And Brownfield being dissatisfied with that judgment has appealed to this court.

Whether appellant has by his own pleadings and also by the pleadings and evidence shown that he is entitled to more than was adjudged to him, we propose first to consider.

After setting out his debts, and official returns of no property on executions issued on his judgments, he proceeds as follows:

"The plaintiff further states that the firm of Carter & Thomas, that is Mr. . Carter, of Tennessee, and Sam B. Thomas, of Kentucky, are justly indebted to the defendant the Bardstown and Green River Turnpike Road Company, a sum of money greatly exceeding the demands herein sued for, for tolls on their stages on said road from Bardstown to New Haven, and from New Haven to Glasgow, during the year ending *in July, 1858.*"

"And plaintiff further states that said corporation is still continuing to receive, and collect tolls under their charter at the gates; but that the tolls of said road, collected since *30th of July, 1858,* have been *sequestered,* or attached by the order of this honorable court at the suit of Daniel S. Howell's Exr., and that Turner Willson and George W. Foreman have also instituted suits in this honorable court against said corporation, and have obtained some orders in said actions operating upon the tolls collected *since the 30th day of July, 1858.*

"But this respondent *is advised, and believes,* that no valid, or effectual attachment has yet been levied on the debt due from said Carter & Thomas who have not been made parties to any suit brought by either of said creditors—and moreover, the attachments of the said Willson and Foreman have been discharged by order of court."

Appellant then concludes with a prayer for an attachment and restraining order against Carter & Thomas, and that the debt owing by them be first applied to the payment of his debt, and if that can not be done, he prays that his suit be consolidated with the suit of Howell's executrix against the road company, "and that the same order of sequestration, or injunction, and restraining order be issued in this action, as was issued in that, or that the order therein had, be made effectual for the purposes of this action"— and then the following direct charge is made by appellant: "The plaintiff states *and charges* that the tolls, and money collected under order of court, after the sequestration of the revenue of said road, are funds to be divided *pro rata* amongst the creditors of said road; but the moneys aforesaid owing from said Carter & Thomas for tolls before said attachment or restraining order was obtained is subject first, to the payment of the debt to this plaintiff"

It is thus conclusively shown that appellant directly alleges twice in his petition that the revenues of the road company *accruing after the 30th of July, 1858,* were *sequestered,* seized upon, and appropriated by the executrix of Howell to her debt, limiting his right of recovery to the amount that Carter & Thomas owed *prior* to that time.

But he insists in this court that Howell's executrix had not made Carter & Thomas defendants to her petition, when he filed his petition, in which *he* made them defendants, and attached the funds in their hands, and that he thereby acquired a prior lien on them and superior to all others. In the paragraph of his petition, in which he makes Carter & Thomas defendants thereto, appellant makes no direct averments; indeed, he makes no averment whatever, that the funds in their hands had not been attached by the executrix of Howell, he merely says, he is *advised, and believes,* that no valid or "effectual attachment had been levied on the debt due from said Carter & Thomas" * * * and the attorney of appellant makes the affidavit to the petition, in which he states *"he believes the statements of the foregoing petition to be true,"* which is only in effect saying that *he believes* that his client *believes,* no valid attachment had been levied on said funds; and that perhaps was as much as he could say, in view of what had been previously alleged, and of the allegation that was to follow; in both of which the *lis pendens* of the executrix is confessed, and a valid seizure of the effects of the company by her, fully recognized,

whereby it would seem that appellant was estopped to deny her right.

The authorities referred to by the learned counsel of appellant, have been examined, and the court can not concur with counsel that the cases are analogous.

The order for the injunction, and attachment made by the judge, in the case of the executrix, is very comprehensive, embracing all the choses in action, property, and effects of the road of every kind, it was served on the president and treasurer of the company before the appellant instituted his suit, and it appears, that Carter & Thomas prior thereto had paid this fund over to the company's treasurer, whereby it was then brought under the said order of injunction, and it was his duty under said order to report it to the court. But without pursuing the subject further, the executrix by her restraining order and attachment acquired a superior lien in equity to at least as much of this fund as was adjudged to her.

As to the second and third objections urged by counsel, the executrix being entitled to the fund, would have a right to look to those who held it, having notice of her right to the same by the *lis pendens*.

Nor do we see any reason for a *pro rata* distribution of this fund—the executrix has acquired a superior equitable lien from anything that appears in this record; and appellant can yet have the credit ordered to be entered on his debt, set aside.

Wherefore the judgment is *affirmed*.

*Harlan & Newman, for appellant.*

---

JAMES M. FOGLE'S EXRS. *v.* WILLIE P. FOGLE, ET AL.

Wills—Discretion of Executors.

A will gives executors a power, "All the bequests, devises, legacies, etc., are not to be paid until X X arrive at the respective ages of 30 years." Held, that the executors could not withhold all the payment, at their discretion, until the 30 year age had been reached by the devisees.

APPEAL FROM MARION CIRCUIT COURT.

OPINION OF THE COURT ·BY JUDGE PETERS:

This suit is brought to have the will of the late James M. Fogle construed, or rather to have the eighth clause thereof construed, as in the preceding clauses he directs to whom, and in what portions his estate shall pass.

In the eighth clause he says: "*All the* bequests, *devises* and legacies that are made in this will are *not* to be paid, or delivered to my four children, Willie P., Mattie B., Bettie P. and James L. Fogle (should the contingency happen by which he should get anything), before they each arrive at the respective ages of thirty years each. And the parts that go to Mattie B. and Bettie P. are to be owned and controlled by them each to their sole and separate use, without being under the control of any husband they, or either of them, may have. If James M. Fogle should receive any part of my estate, upon his death without child or children, the part so received is to go, and pass to his half brothers and sisters, or the survivor, or his or their children, the child, or children to receive the father or mother's part; in no event is his estate to go to his mother, or any of her kindred on her mother or father's side."

The devisees insist that the executors have the power, under the clause cited, to appropriate at least the income or annual profits on their respective portions to their support, and education, while the executors contend that they have no such power under the will, and can make no distribution or advancement to the devisees until, or as they attain the age of thirty years respectively. Neither the grammatical, nor literal construction of the clause under consideration sustains the position of the executors. They are not prohibited from paying over a part of the legacies—the language is that they shall not pay *all;* if the testator had said that his executors should not pay any part of their legacies to his children, until they arrived at the ages of 30 years respectively, the prohibition would have been complete, and the devisees might not have been able to enjoy their portions until they did arrive at the ages designated, but that is not the language. They are not restrained from paying a part before the period fixed. The restriction is that they are not to pay *all.* They certainly may pay a part and not transcend their power, even according the strictest construction of the

will. Nor. is there anything in the ninth clause of the will in conflict with this interpretation.

Wherefore the judgment is *affirmed.*

*Russell & Avritt, for appellants.*
*R. & F., for appellees.*